UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE D. WILEY, | ) | CASE NO. 5:14CV1162 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | MEMORANDUM OPINION AND |
| ACTING COMMISSIONER OF | ) | ORDER |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Michelle D. Wiley ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and application for Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that the administrative law judge ("ALJ") erred in her decision because she failed to accord proper weight to the opinions of Plaintiff's treating physician, consulting examiner, and state agency physician. ECF Dkt. #14.

For the following reasons, the instant case is REMANDED for further proceedings consistent with the instant Opinion and Order.

**I.     PROCEDURAL AND FACTUAL HISTORY**

Plaintiff filed applications for SSI and DIB on April 20, 2010 and May 21, 2010, respectfully. ECT Dkt. #11 ("Tr.") at 22. The Social Security Administration denied Plaintiff's applications initially and upon reconsideration. *Id.* at 5. Plaintiff requested a hearing before an ALJ, and hearings were held on May 14, 2012 and October 24, 2012. Tr. at 40, 49.

On January 17, 2013, the ALJ denied Plaintiff's applications for SSI and DIB. Tr. at 19. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since September

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

13, 2005.  *Id.* at 24.  The ALJ determined that Plaintiff suffered from the following severe impairments: obesity; status-post left cerebral vascular ischemic infarction and left internal carotid artery dissection; compression fracture of the T8 and T9 vertebral bodies, with mild spondylosis of the T6 through T10 vertebral bodies; chondromalacia of the left knee; capsulitis of the left ankle; right foot drop; hammer toes; acquired right metatarsal deformity; unspecified deformity of the right foot; gastro-esophageal reflux disease; irritable bowel syndrome; dysphagia; migraine headaches; depressive disorder (not otherwise specified); major depressive disorder; generalized depressive disorder; post-traumatic stress disorder; mood disorder (not otherwise specified); cognitive disorder (not otherwise specified); bipolar spectrum features; and borderline personality disorder.  *Id.* at 25.

The ALJ found that Plaintiff did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  Tr. at 25.  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain exceptions.  *Id.* at 27.  The ALJ also found that Plaintiff was unable to perform any past relevant work, but considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  *Id.* at 35.  Based on the above findings, the ALJ held that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 13, 2005 through the date of the decision.  *Id.* at 36.

Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied her request for review.  Tr. at 1.  The ALJ's decision therefore became the final decision of the Commissioner.  On May 30, 2014, Plaintiff filed the instant suit seeking review.  ECF Dkt. #1.  On  September 30, 2014, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  On October 29, 2014, Defendant filed a brief on the merits.  ECF Dkt. #15.  Plaintiff filed a reply brief on November 26, 2014.  ECF Dkt. #17.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

On January 17, 2013, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  Tr. at 25.  The ALJ opined that because

-2-

Plaintiff's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the paragraph (B) criteria were not satisfied. *Id.* at 26. Continuing, the ALJ indicated that she also considered whether the paragraph (C) criteria were satisfied, and determined that they were not satisfied. *Id.*

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that Plaintiff: may occasionally climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; is limited to the performance of simple, routine tasks that can be learned in thirty days or less, which are repetitive, such that the environment is relatively static, undertaken in a setting that is low stress, defined as precluding tasks that involve high production quotas, strict time requirements, arbitration, negotiation, confrontation, directing the work of, or being responsible for the safety of others, which requires no more than limited and superficial interaction with co-workers and the public. Tr. at 27. Further, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible for the reasons provided by Plaintiff. *Id.* at 28.

The ALJ determined that the record did not support Plaintiff's contentions of physical deficiencies resulting from a stroke. Tr. at 29. Further, the ALJ found that physical examinations included in the record consistently, albeit not universally, reported either minimal or normal findings, and cited examples of these physical examinations. *Id.* The ALJ indicated that Plaintiff followed a regimen of prescription medications intended to address her impairments, and, according to Plaintiff, did not experience any side effects. *Id.* Additionally, the ALJ determined that, when considered as a whole, the record did not support the contention that Plaintiff's impairments would be preclusive of all types of work. *Id.* at 31.

When discussing Plaintiff's mental impairments, the ALJ indicates that Plaintiff was diagnosed with depressive disorder (not otherwise specified), major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, mood disorder (not otherwise specified), cognitive disorder (not otherwise specified), bipolar spectrum features, and borderline personality disorder.

Tr. at 31. The ALJ opined that although these diagnoses would be consistent with Plaintiff's allegations of deficient memory and concentration, her quickness to anger, and her bouts of depression, the record, when considered as a whole, is not supportive of the contention that the existence of these impairments would be preclusive of all types of work. *Id.* The ALJ further opined that the mental status examinations included in the record have consistently, albeit not universally, reported either minimal or normal findings. *Id.* at 31.

Continuing, the ALJ indicated that Plaintiff has been issued multiple global assessment of function ("GAF") scores, ranging from a low of thirty to a high of sixty. Tr. at 32. The ALJ noted that typically Plaintiff was assigned a score of fifty, which is consistent with the ability to work. *Id.* The ALJ opined that, in sum, the evidence indicated that the symptom limitations relevant to Plaintiff's impairments were not as severe as alleged. *Id.* The ALJ stated that Plaintiff engaged in the following daily activities: attending to her own hygiene and grooming; engaging in routine household chores, including cleaning, laundry, and meal preparation; engaging in child rearing activity for a young child; and driving, shopping in stores, using a computer, visiting with others, watching television for pleasure, and exercising regularly. *Id.* The ALJ stated that while none of the above activities, considered in isolation, would warrant a finding of "not disabled," when considered in combination, they strongly suggest that Plaintiff would be capable of engaging in the work activity contemplated by the RFC determination. *Id.* The ALJ also stated that, although the inconsistent information provided by Plaintiff may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by Plaintiff generally may not be entirely reliable. *Id.* at 33.

The ALJ discussed the weight she accorded to various opinions offered by Plaintiff's psychologists and physicians. At issue in this case is the weight accorded to the opinions offered by Richard Litwin, Ph.D., Bruce Goldsmith, Ph.D., and Vera Astreika, M.D. ECF Dkt. #14 at 1. Accordingly, only the opinions from the above three psychologists and physicians will be discussed herein.

The ALJ indicated that she accorded considerable weight to the opinion of Plaintiff's consultative psychological examiner, Dr. Litwin, which indicated that Plaintiff could perform

simple, routine tasks in a static environment, with infrequent changes, and with no requirement of strong interpersonal teamwork. Tr. at 33. The ALJ indicated that Dr. Litwin examined Plaintiff on a single occasion and reported within the bounds of his professional certifications and specialty. *Id.* at 33-34. Further, the ALJ stated that Dr. Litwin's opinion was largely consistent with the medical evidence on the record, including Plaintiff's presentation during the hearing. *Id.* at 34.

The ALJ indicated that she accorded some weight to the opinion of the state agency medical consultant, Dr. Goldsmith, namely, that Plaintiff could perform simple to moderately complex tasks, with no time or production demands, in a static environment where changes are easily explained, and with no strict production quotas. Tr. at 34. The ALJ opined that Dr. Goldsmith had the opportunity to examine Plaintiff's records, to which she cited liberally in his opinions, is well versed in the terminology and analytic framework employed in the disposition of Plaintiff's claims, and that Dr. Goldsmith's opinion was broadly consistent with the evidence of record. *Id.*

The ALJ accorded little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Astreika, indicating that Plaintiff would have multiple marked and extreme limitations in her ability to understand, remember, and carry out instructions, to maintain concentration, persistence, and pace, to relate to others, and to withstand the stressors of day-to-day work. Tr. at 34. The ALJ stated that Dr. Astreika treated Plaintiff over a lengthy period and was reporting within the bounds of her professional certification, however, persistent references in the treatment notes of Plaintiff's cooperative behavior and at least fair concentration suggested that the limitations as set forth were at least somewhat overstated. *Id.* Further, the ALJ opined that the extremity of the limitations opined were inconsistent with all opinion on the record. *Id.*

Continuing, the ALJ indicated that Plaintiff was unable to perform any past relevant work. Tr. at 35. The ALJ stated that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on the above considerations, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 13, 2005, through the date of the ALJ's decision. *Id.* at 36.

### **III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB or SSI.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### **IV.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Social Security Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (citations omitted).

### V. LAW AND ANALYSIS

#### A. TREATING PHYSICIAN'S OPINION

Plaintiff first asserts that the ALJ failed to give appropriate weight to the opinion of Dr. Astreika, her treating physician. ECF Dkt. #14 at 11-18. An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers,* 486 F.3d at 243. If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to

-7-

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed. App'x 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and his opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (quotation omitted).

In the instant case, the ALJ's discussion regarding the opinion of Dr. Astreika, in its entirety, reads as follows:

-8-

> Little weight was accorded to the opinion of [Plaintiff's] treating psychiatrist, Vera Astreika, M.D. [co-signed by [Plaintiff's] counselor, Shari Burgeson, PPC] that [Plaintiff] would have multiple marked and extreme limitations in her ability to understand, remember and carry out instructions, to maintain concentration, persistence and pace to relate to others and to withstand the stressors of day-to-day work. Dr. Astreika treated [Plaintiff] over a lengthy period and was reporting within the bounds of her professional certifications; however, persistent references in the treatment notes to [Plaintiff's] cooperative behavior (6F/3, 4) and at least fair concentration (14F/21, 29), suggest that the limitations set forth are at least overstated. Moreover, the extremity of the limitations opined are inconsistent with all other opinions of record.

Tr. at 34.

Plaintiff first argues that the ALJ's decision performed no analysis of the medically-acceptable clinical and testing diagnostic techniques, as required by *Gayheart v. Comm'r of Soc. Sec.*, 710 F. 3d 365 (6th Cir. 2013). ECF Dkt. # 14 at 15. *Gayheart* requires that "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques,' and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)). Additionally, the Commissioner must provide good reasons for discounting the weight given to a treating-source opinion. 20 C.F.R. § 404.1527(c)(2). Defendants argue that, despite Plaintiff's assertions to the contrary, substantial evidence supports the ALJ's assessment of Dr. Astreika's opinion. ECF Dkt. #15 at 8.

Plaintiff next argues that the ALJ's decision noted only four areas of functioning covered by Dr. Astreika's opinion. ECF Dkt. #14 at 15. Plaintiff continues, highlighting fives areas of limitation reported by Dr. Astreika that were not mentioned in the ALJ's discussion of Dr. Astreika's opinion. *Id.* at 16. Defendant argues that the ALJ's decision is clear regarding the weight that she gave to Dr. Astreika's opinion and the reason for giving that weight, and that, despite Plaintiff's contentions, the ALJ provided good reasons for her assessment. ECF Dkt. #15 at 8.

Plaintiff contends that the ALJ's assertion that Plaintiff's "cooperative behavior" and "at least persistent concentration" suggest the limitations set forth in Dr. Astrekia's opinion is a mischaracterization and does not contradict Dr. Astreika's opinion about Plaintiff's ability to sustain cooperative behavior for a forty-hour workweek. ECF Dkt. #14 at 17. Plaintiff continues, arguing

-9-

that even if the limitations reported by Dr. Astreika "are at least somewhat overstated," they would still indicate disability. *Id.* at 18. Additionally, Plaintiff argues that the ALJ was incorrect in generalizing that the extremity of the limitations opined by Dr. Astreika are inconsistent with the other opinions on the record. *Id.* Defendant contends that there are severe discrepancies between the treatment notes and Dr. Astreika's opinion, and that substantial evidence support the ALJ's assessment of Dr. Astreika's opinion. ECF Dkt. #15 at 10.

As stated above, a presumption exists that the opinion of a treating physician is entitled to great deference. *Rogers*, 486 F.3d at 243. "If the ALJ decides to discount or reject a treating physician's opinion, he must provide good reasons for doing so." SSR 96-2p. The ALJ is required to provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for the weight." *Id.* This allows a claimant to understand how the case is determined, and ensures that the ALJ applies the treating physician rule and permits a meaningful appellate review of the ALJ's decision. *Wilson*, 378 F.3d at 544 (internal citations omitted). If an ALJ fails to explain why he rejected or discounted the opinion of a treating source, the Court must find that substantial evidence is lacking, even when the conclusion of the ALJ may be justified based on the record. *Rogers*, 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

In the instant case, the ALJ has failed to provide good reasons that are sufficiently specific to make clear to subsequent reviewers the reasons for the weight given to Dr. Astreika's opinion, or to make Plaintiff aware of how her case was determined. Accordingly, the Court must find that substantial evidence is lacking. Here, the ALJ has failed to follow agency rules and regulations, and, although the ALJ's decision could potentially be justified based on the record, the case must be remanded.

The only indication the ALJ provides regarding the substance of her decision about the weight to accord Plaintiff's treating physician is "... however, persistent references in the treatment notes to [Plaintiff's] cooperative behavior and at least fair concentration, suggest that the limitations set forth are at least overstated. Moreover, the extremity of the limitations opined are inconsistent with all other opinions of record." Tr. at 34. The ALJ's brief, vague indication of why she decided

-10-

to provide only little weight to the opinion of Plaintiff's treating physician is not sufficiently specific and fails to explain clearly the ALJ's basis for her decision. Plaintiff points out that the ALJ completely omitted five of the nine limitations in Dr. Astreika's opinion. Simply stating that Plaintiff's "cooperative behavior" and "fair concentration" suggest that the limitations in Plaintiff's treating physician's opinion are somewhat overstated is not sufficient to create good reasons for discounting that treating physician's opinion. Further, the only additional statement made by the ALJ, namely, that the extremity of the limitations opined by Dr. Astreika was inconsistent with the record, without any additional discussion, examples, or citations, is likewise insufficient to create good reasons to discount Dr. Astreika's opinion.

The ALJ has failed to comply with agency rules and regulations, and has failed to provide good reasons for discounting the opinion of Plaintiff's treating physician. Accordingly, the case is remanded to the ALJ to properly weigh the opinion of Dr. Astreika. This Opinion and Order notes that it is not determinative of the proper weight to accord Dr. Astreika's opinion, but rather orders that the ALJ must provide a proper analysis for the weight provided to Dr. Astreika's opinion as Plaintiff's treating physician.

### B. NON-TREATING PHYSICIAN'S OPINIONS

Plaintiff next contends that the ALJ erred in failing to provide any explanation for not adopting the opinions of Dr. Litwin that agreed with Dr. Astreika's opinion, but not with the ALJ's RFC finding. ECF Dkt. #14 at 22. Plaintiff also argues that the ALJ erred in failing to explain why some of the limitations contained in Dr. Goldsmith's opinion were omitted from the ALJ's decision without explanation. Id. at 24. Dr. Litwin was a consulting examiner, and Dr. Goldsmith was a state-agency reviewing psychologist.

The above mentioned claims made by Plaintiff are no longer ripe for review because the determinations regarding the opinions of Dr. Litwin and Dr. Goldsmith are directly tied to the determinations regarding the weight accorded to the opinion of the treating physician, Dr. Astreika. Accordingly, if upon remand the ALJ determines that a different amount of weight must be given to the opinion of Dr. Astreika, the ALJ must likewise determine the proper level of weight to accord to the opinions of Dr. Litwin and Dr. Goldsmith.

## **VI.** **CONCLUSION**

For the foregoing reasons, the undersigned finds that the ALJ failed to properly explain her reasons for according less than controlling weight to the opinion of Plaintiff's treating physician, and REMANDS the case for further proceedings consistent with the instant Opinion and Order.

IT IS SO ORDERED


DATE: August 26, 2015                              */s/George J. Limbert*
                                                             GEORGE J. LIMBERT
                                                             UNITED STATES MAGISTRATE JUDGE